PETER D. KEISLER
Assistant Attorney General
Civil Division
THOMAS W. HUSSEY
Director
ALLEN W. HAUSMAN
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
BY: JANICE MONTANA, Attorney
c/o Office of Chief Counsel
Immigration and Customs Enforcement
970 Broad Street, Room 1104B
Newark, New Jersey 07102
(973) 645-3091
JM 3793

CHRISTOPHER J. CHRISTIE
United States Attorney
NEIL R. GALLAGHER
Assistant United States Attorney
970 Broad Street, Room 702
Newark, New Jersey 07102
(973) 645-2835
NRG 0276

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Hon. Harold A. Ackerman |
| ) | |
| Plaintiff, ) | Civil Action No. 01-CV-2120 (HAA) |
| v. ) | |
| ) | STATEMENT PURSUANT TO |
| MARCO PAULO REBELO, ) | L.CIV.R. 56.1 |
| ) | |
| Defendant. ) | |

This Statement is being submitted pursuant to L.Civ.R. 56.1. The sections herein follow the sections contained in Plaintiff's Brief in Support of its Motion for Summary Judgment.

# I. STATEMENT OF THE CASE
## 1. JURISDICTION

The United States of America's Brief, Part I, Section 1, captioned "JURISDICTION," primarily contains procedural facts that are part of the Court record and/or are embodied in the documents attached to Plaintiff's Declarations and are not in dispute. These facts include the following:

On May 2, 2001, the United States filed a Complaint to revoke Defendant's naturalization with an Affidavit of Good Cause attached thereto. Complaint. Declaration of Counsel, par. 5.

A Summons was issued by the Court on same date. Summons.

Defendant submitted to the Court for filing, his Answer to the Complaint which contained eleven Affirmative Defenses. Answer.

Defendant lived in the District of New Jersey at the time this naturalization revocation suit was instituted and he still lives there today. Ex. T, pages 16-17.

In a formal, written Memorandum of Understanding (MOU) between the U.S. Department of Justice, Office of Immigration Litigation (OIL), the United States Attorneys Offices and the legacy INS, the U.S. Attorneys Offices delegated the authority to handle certain naturalization revocation litigation such as the case at bar, to OIL. It was through the delegation of authority contained in the MOU that counsel for Plaintiff was detailed to OIL and assigned to handle the instant case. Declaration of Counsel, par. 2.

Pursuant to 8 U.S.C. 1451(a), this Court has jurisdiction over this naturalization revocation action. By Opinion and Order dated March 10, 2003, this Court granted the United States' motion to strike Defendant's Seventh and Eighth Affirmative Defenses, granted the United States' motion to strike Defendant's Fourth and Sixth Affirmative Defenses only with respect to estoppel, and denied Plaintiff's motion to strike Defendant's Third, Fifth, Ninth and Tenth Affirmative Defenses, on the

pleadings. Opinion and Order dated March 10, 2003.

## 2. NATURALIZATION PROCEEDINGS

The United States of America's Brief, Section I, Subsection 2, captioned "NATURALIZATION PROCEEDINGS," primarily contains procedural facts about Defendant's naturalization proceedings that are part of his naturalization record and are not in dispute. These facts include the following:

Defendant admits that on July 5, 1995, he filed with the legacy INS his Application for Naturalization, INS Form N-400. Exs. A at 1, N, Section II, par. 2, and T, page 58.

In response to Question 15(b) on his application wherein it asks whether the applicant had ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations, Defendant admits that he responded in the affirmative. Exs. A at 3; N, Section II, par. 4, and T, pages 73-79.

Defendant admits that in response to question 15 on his naturalization application, requesting detailed information about any arrests, charges indictments, convictions, etc., he attached a statement that says "Supplement to #15, Elizabeth, N.J., Marco Paulo Rebelo, May 14, 1995, DISORDERLY PERSONS OFFENSE, CHARGES DISMISSED." Exs. B, and N, Section II, par.5.

Defendant admits the genuineness of his naturalization application and the attached supplement to question 15 therein. Ex. T, pages 14-16.

Defendant admits that he signed the application in Part 11, on June 11, 1995, under penalty of perjury thereby swearing or affirming that the contents of the application were true and correct. Exs. A at 4, N, Section II, par. 1, P, Interrogatory 14, and T, pages 57, 97 and 98.

Defendant admits that no one signed the naturalization application in Part 12 which calls for the

signature of any other person preparing the form other than the applicant. Exs. A at 4, and T page 57.

Based upon Defendant's certified answers to the questions on his application for naturalization, the legacy INS approved his application on October 31, 1995. Ex. A at 1, Parra Declaration, pars. 7-9. The legacy INS did not have an FBI criminal identification record (RAP Sheet) for Defendant, on October 31, 1995, the date his naturalization was approved, therefore, the INS relied upon Defendant's representations made under penalty of perjury, about his criminal history in approving his application. Parra Declaration, par. 9.

On December 7, 1995, Defendant was administered the oath of allegiance and was issued Certificate of Naturalization No. 21 797 328. Ex. C.

Defendant unequivocally admits that the arrest and disposition information on the supplement to #15 of his naturalization application was not true. Ex. T, pages 77-79.

### 3. CRIMINAL HISTORY

The United States of America's Brief, Section I, Subsection 3, captioned "CRIMINAL HISTORY," is primarily based upon facts from certified documents that are part of court and law enforcement criminal records and are not in dispute.

In his responses to Plaintiff's Request For Admissions, Ex. N, Section I and during his deposition, Ex. T, pages 13-16, Defendant admits the authenticity of the documents relating to his criminal history including the Police Investigation/Arrest Report, Ex. F, Waiver of Indictment and Trial By Jury, Ex. G, Criminal Accusation Ex. H, Plea Agreement, Ex. E, Judgment and Conviction Order, Ex. D, and Application For Release From Probation dated July 14, 1997, Ex. L.

In addition, Defendant attached to his answers to Interrogatories, the three criminal complaints that were initially issued against him by the State of New Jersey. Knuth Declaration, Exs. I, J, K and P.

Defendant acknowledged that the Stenographic Transcript of his Guilty Plea Hearing obtained from the Union County Criminal Court was accurate. Exs. M and T, pages 48-51.

Other more specific facts about Defendant's criminal history that appear **not to be in dispute** include the following:

Defendant admits that on May 14, 1995, he was arrested and charged with two counts of aggravated assault on a police officer, two counts of resisting arrest, terrorist threats and inciting a riot. Exs. F, I, J, K, N, Section I, P, numbers 1, 2, 12, T, pages 13-16 and 77-79.

Defendant admits that he was charged with aggravated assault on a police officer, in the third degree in the Criminal Accusation. Exs. H, N, Section II, par. 6, and T, pages 77-79.

Defendant admits that on July 6, 1995, he signed a Plea Agreement wherein he pled guilty to aggravated assault, in the third degree. Exs. E, N, Section II, pars. 9 and 10, and T, pages 46-48, 48-51.

Defendant admits that he pled guilty to aggravated assault in the third degree, in court, before Judge Barisonek, in Union County. Exs. M and T, pages 48-51.

He admits that he testified on the record that on May 14, 1995, he assaulted a police officer (Officer Gramiak), by getting into an altercation with him and biting his arm. Exs. M and T, pages 48-51.

He also admits that the Stenographic Transcript of his Guilty Plea was accurate. Exs. M and T, pages 48-51.

Defendant admits that he committed the third degree aggravated assault on May 14, 1995, about four weeks prior to the June 11, 1995 date that he signed his naturalization application. Exs A and D through K and T, pages 58-60.

Defendant admits that prior to taking the oath of allegiance, he was convicted of aggravated assault

and sentenced on September 8, 1995. Exs. D and N, Section II, par. 13.

Defendant admits that he was sentenced to two years probation which he served from September 8, 1995 through July 14, 1997. Exs. L, N, Section II, numbers 16 and 17 and T, pages 101-102.

### 4. NATURE OF THE CRIME

See Section II, Subsection 2B infra.

### II. 1 BURDEN OF PROOF AND SUMMARY JUDGMENT STANDARD; and 2.A. Statutory Scheme

The United States of America's Brief, Part II, Sections 1 and 2A, is primarily based upon legal authority rather than factual statements.

### 2.B. Defendant's Naturalization was Illegally Procured because He Committed and Was Convicted of A Crime Involving Moral Turpitude During the Statutory Period.

The United States of America's Brief, Section II, Subsection 2B, is primarily based upon legal authority and is an issue of law.

However, Defendant does not dispute the fact that on July 6, 1995 he pled guilty to and on September 8, 1995, he was sentenced for aggravated assault on a police officer, in the third degree. The crime of aggravated assault, in the third degree under N.J.S.A. 2C:12-1b(5)(a), is taken from the Judgment and Conviction record and the Criminal Accusation for Defendant which conviction and accusation, Defendant does not dispute. Exs. D, E, H, M, N, Section I, and T, pages 13-16, 48-51.

Defendant admits that on May 14, 1995, he assaulted a police officer, when he got into an altercation with him, biting his arm and causing him to bleed. Id. Exs F, T, pages 13-16, 48-51. Defendant admits the authenticity of all of the documents that comprise his criminal history including the Investigative/Arrest Reports and the complaints that were issued against him (Exs. F, I, J, K and H) that detail the facts surrounding the conviction for his May 14, 1995 aggravated

assault on a police officer. Ex. N, Section I, Ex. T, pages 13-16, and 48-51.

Defendant assaulted Police Officer Gramiak of the Elizabeth Police Department while he was in uniform, acting in the performance of his duties. Id. Exs. D, E, F, H, I, J, K and M.

On May 14, 1995, Police Officer Gramiak had first arrested Defendant's brother, handcuffed him, placed him in the back seat of the patrol car and was in the process of having his car towed when Defendant arrived at the scene. Exs. F, pages 1 through 5 and T, pages 27-35.

Defendant went to the scene of his brother's arrest to try to stop the officers from towing the car the brother was driving as it was registered to Defendant. Exs. F and T, pages 27-35.

Defendant got into an altercation with Police Officer Gramiak and bit his bare skin (as his sleeves were rolled up). Exs. F and T, pages 27-35.

The police officer suffered bodily injury as a result of the altercation with Defendant and was taken off duty and transported to Elizabeth General Medical Center hospital following the incident. Exs D, H, I, J, K and F, pages 5, 7, 8, 9 and 10.

### 2C. Defendant's Naturalization was Illegally Procured because He was on Probation When His Application was Approved and When He Took His Oath.

Defendant repeatedly and unequivocally admits that he was on probation from September 8, 1995 through July 14, 1997, including October 31, 1995, the date his application was approved and December 7, 1995, the date he took the oath of allegiance. Exs. L, N, Section II, pars. 16 and 17, and T, pages 101-102.

Defendant also tacitly admits that he took no action to challenge the probation regulation before the rule became effective. Ex. P, Interrogatory 25(b).

### 2.D. Defendant's Naturalization was Procured by Willful Misrepresentation or Concealment of Material Facts.

As noted in Section I, Subsection 3 above, captioned "CRIMINAL HISTORY," Defendant admits

the authenticity of the documents relating to his criminal record as set forth in the United States' Brief.

In particular, Defendant admits the genuineness of his naturalization application and the attached supplement to question 15 therein. Ex. T, pages 14-16.

Defendant admits he signed his naturalization application in Part 11 of the form, under penalty of perjury, on June 11, 1995 and that no one signed Part 12 which calls for the signature of any other person preparing the form other than the applicant. Exs. A, page 4, N, Section II, par.1, and T, page 57.

Defendant admits that on May 14, 1995, he was arrested and charged with two counts of aggravated assault on a police officer, two counts of resisting arrest, terrorist threats and inciting a riot. Exs. F, page 8, I, J, K, P, interrogatory numbers 1, 2, 12, N, Section I, and T, pages 13-16.

**Defendant admits that on June 11, 1995, when he signed the naturalization application, he knew he had been arrested only about four weeks earlier on all the pending charges contained in the three complaints issued against him. Exs. A at 4, F, I, J, K and T, pages 58-60.**

**Defendant knew at the time he was completing the supplement to question #15 of his naturalization application that his case was still pending. Ex. Y, page 33. See also, Exs. B, D, E, F, H, I, J, K, N, Section I, and T, pages 13-16, 48-51, 58-60 and 77-79.**

Defendant admits that in response to question 15 on his naturalization application which question asks for the details including the date, charges and disposition of all arrests against the applicant, he attached a statement that says "Supplement to #15, Elizabeth, N.J., Marco Paulo Rebelo, May 14, 1995, DISORDERLY PERSONS OFFENSE, CHARGES DISMISSED." Exs. B, N, Section II, par. 5, and T, pages 14-16.

Defendant admits that to the best of his recollection, he read the answers on his naturalization application before he signed it. Exs. A, B and T, pages 72-73.

Defendant would not sign something without reading it. Ex. T, page 47.

**Defendant admits that he answered question 15(b) and that he must have read the supplement to question 15(b), before he signed the application. Exs. A, B, and T, pages 73-79.**

Defendant admits that the information contained in the supplement to question 15 of his naturalization application was incorrect in that he was not charged with a disorderly persons offense but rather, with four other offenses including aggravated assault, resisting arrest, obstruction of the administration of law and terroristic threats. He also admitted that all the charges were still pending on June 11, 1995, the date Defendant signed his naturalization application. Exs. B, D, E, I, J, K, and T, pages 77-79.

Although Defendant cannot necessarily remember filling out the naturalization application, he admits he signed the application and that the detailed information about him on the application came from him. He also admits the truth of most of the information contained thereon. Ex. T, pages 60-62.

Defendant remembers pulling out a piece of paper from his pocket with his selective service number on it and filling in the information on part seven of the application; he also admitted that the writing in sections five and seven looks like his handwriting. Ex. T, pages 69, 72 and 76.

**Defendant acknowledged that he was aware his arrest on pending criminal charges including aggravated assault on a police officer was a problem that he had to deal with on his naturalization application.** Exs. T, page 90 and Y, page 29.

Defendant repeatedly admits that John Ammiano was his criminal attorney. Exs. M (cover page)

and T, pages 42, 44 and 47.

Defendant's criminal attorney John Ammiano was not present at the time Defendant's naturalization application was being completed and did not counsel Defendant on what to disclose in the supplement. Ex. Y, pages 31-33.

In 1995, Nelson Monteira was a Municipal Court Judge in Elizabeth. Exs. X and Y, page 39.

Defendant admits the information on the supplement to question 15 on his naturalization application about the criminal charges and disposition thereof was incorrect. Ex. T, pages 77-79.

### 3. IN THE ALTERNATIVE, THIS COURT SHOULD GRANT THE UNITED STATES' MOTION TO STRIKE DEFENDANT'S REMAINING AFFIRMATIVE DEFENSES, TO WIT, NUMBERS ONE THROUGH SIX, NINE AND TEN, PURSUANT TO FED. R. CIV. P. 12(f), AS THEY ARE INSUFFICIENT AND INAPPROPRIATE AND WITHOUT MERIT.

The United States of America's Brief, Part II, Subsections 3 A through E, are primarily based upon legal authority rather than factual statements.

The undisputed facts relating to Subsection 3C of Plaintiff's brief regarding willful misrepresentations, are set forth in Subsection 2D (willful misrepresentations) herein.

The undisputed facts relating to Subsection 3D regarding crimes involving moral turpitude, are set forth in Subsection 2B (CIMT's) herein.

The undisputed facts relating to Subsection 3E regarding the Probation Regulation, are set forth in Subsection 2C herein (Probation Regulation).

In addition, the undisputed facts relating to the argument that the court should strike Defendant's Affirmative Defense of laches are as follows:

Defendant admits that a Notice of Intent to Revoke (NOIR) his naturalization, administratively, was served by the legacy INS upon him, in or about November 1997, less than two years after Defendant was naturalized. Exs. P, interrogatory number 19, and T, pages 80-82.

The NOIR was authorized by 8 C.F.R. §340.1, the regulation establishing the administrative denaturalization procedure.

In 1998, shortly after administrative denaturalization proceedings were initiated against Defendant, a federal court enjoined the entire administrative denaturalization process. Subsequently, that court declared the administrative denaturalization regulation invalid. See, Gorbach v. Reno, 219 F.3d 1087 (5th Cir. 2000).

Whereupon, the government terminated all administrative denaturalization proceedings and initiated judicial denaturalization proceedings such as the instant case, in the appropriate federal district courts. See also, United States v. Reve, 241 F.Supp.2d 470 (D.N.J. 2003).

Shortly after the Gorbach case was decided in 2000, Plaintiff instituted the within case (May 2, 2001) against Defendant. See Complaint.

## CONCLUSION

The United States respectfully submits that a careful review of Defendant's responses to Plaintiff's Request for Admissions (**Exhibits N and O**), Answers to Interrogatories (**Exhibit P**), the Stenographic Transcript of his Deposition (**Exhibit T**) and the Stenographic Transcript of his father, Alberto Rebelo's Deposition (**Exhibit Y**), together with the undisputed statements contained in the Declaration of Alfred Parra and **Exhibits A, B and C**, attached thereto (records contained in Defendant's legacy INS administrative file) and the Declaration of Joseph R. Knuth and **Exhibits D through M** attached thereto (records from the respective courts and Governmental Entities relating to Defendant's criminal history), reveals that there is no genuine issue of material fact to be determined by a trial and that the facts material to Plaintiff's motion for summary judgment are not is dispute.

Accordingly, the United States respectfully requests that the Court grant its Motion for

Summary Judgment on the basis of the legal authority set forth in its brief as well as the declarations, documents and exhibits submitted in support thereof. In the alternative, the United States requests that this Court strike Defendant's remaining affirmative defenses, pursuant to Rule 12(f).

                                      Respectfully submitted,

                                      PETER D. KEISLER
                                      Assistant Attorney General
                                      Civil Division
                                      ALLEN W. HAUSMAN
                                      Senior Litigation Counsel
                                      Office of Immigration Litigation
                                      U.S. Dept. of Justice, Civil Division

BY: *[signature]*
               JANICE MONTANA, ATTORNEY